## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

```
------------------------------------------------------X
```

ANTWANN FROST                                   :
DARNELL SMITH                                   :
      Plaintiffs,                          :
                         :
                         :    **CASE No. 1:06MS00360**
                         :    **(ESH)(AK)**
      vs.                                  :
                         :

**CHRISTOPHER BRIDGES, KANYE WEST,**    :
**EMI APRIL MUSIC, INC. a**              :
**Connecticut Corporation, LUDACRIS MUSIC** :
**PUBLISHING, INC., YE WORLD MUSIC,**    :
**UMG RECORDINGS, INC., and JOHN DOE**   :
**DEFENDANTS 1 – 100**                   :
           **Defendants,**                :

```
------------------------------------------------------X
```

## REPLY MEMORANDUM OF LAW IN SUPPORT OF
## MOTION TO QUASH

### INTRODUCTION

As all parties have acknowledged, the underlying matter involves matters pertaining to
Plaintiffs' copyright infringement claim. Plaintiffs in the underlying action (herein "Plaintiffs")
allege that Defendants, Christopher Bridges, Kanye West and their respective recording – UMG
Recording, Inc., and music publishing companies – Ludacris Music Publishing, Ye World
Publishing, and EMI April Music Publishing, Inc. (herein "Defendants") infringed Plaintiffs
copyright in the musical composition entitled "*What I'm Look'n 4*"  (herein the "Infringed
Composition").

The matters for which Attorney Rosario-Davis' testimony and her papers are sought, are
irrelevant to the underlying action. Defendants' Opposition is submitted in bad faith and contrary
to recently acquired testimony from Plaintiffs and other third parties in the underlying action.

Plaintiffs and Attorney Rosario-Davis should be awarded costs and fees in connection with the issuance of the Subpoenas and defense of this Motion to Quash.

**A.    The Materials Sought By The Subpoena Are Not Relevant To The Matters At Issue In This Case**

In the present case, the Defendants attempt to discover information from Attorney Rosario-Davis that is irrelevant to any claim or defense asserted in the case; or available through and alternative means. It must be stressed that this is not a complicated matter. Rather, it is a very simple case involving (1) access by Defendants to the Infringed Composition written by Plaintiffs; (2) whether these is substantial similarity between the Infringed Composition a musical composition entitled *"Stand Up"* written by Defendants Christopher Bridges and Kanye West and commercially exploited by their related record and music publishing companies (herein the "Infringing Composition"); and (3) acts of alleged infringement.

The claims in the Complaint center around events taking place between March 2003, when the infringed composition was created by Plaintiffs and October 2003, when the infringing album entitled "Chicken N' Beer" was commercially released by Defendants. These allegations are not the type of claims that would allow for the overly broad and extremely intrusive discovery that Defendants seek into time periods and matters that are not relevant. Nor are these allegations the type that should allow Defendants to delve into the attorney-client relationship between Plaintiffs and Attorney Lita Rosario-Davis. Certainly, there is no allegation in the Complaint or the Answers regarding matters prior to January 2003. Specifically Defendants by and through their counsel, now contend in their opposition papers that there are three limited areas of relevant information that could involve Attorney Rosario-Davis' testimony:

1.    Untold's Association with Black Rain Records.

2.    Untold's association with other entities, who according to Plaintiffs' responses to Defendants interrogatories were involved in attempts to license and/or distribute "***What I'm Look'n 4,***" the Infringed Composition.

3.    Plaintiffs' application to the United States Copyright Office and the accuracy of the information contained therein.

With regard to these three limited areas of purported relevant information please note the following:

**1.  Untold's Association with Black Rain Records.**

    **a.    The Time Period of Rosario-Davis' Representation of "Untold" is Irrelevant.**

Attorney Lita Rosario-Davis' initial professional relationship with the Plaintiffs began in February 2001 and ended informally in December 2003, and formally on January 15, 2003. Formal notice to Attorney Rosario-Davis from Untold of the retention of new counsel by Plaintiffs at that time is attached hereto as Exhibit A, along with Attorney Rosario-Davis' response. Defendants were provided with a copy of Exhibit A in June 2006, during discovery in the underlying litigation.

    **b.    Plaintiffs had other counsel who handled the Black Rain Records Contract after January 15, 2003.**

Both Plaintiffs Frost and Smith testified, last week, before Defendants filed their Opposition Motion here, that Matt Middleton, Esq. handled matters related to Black Rain Records and Ebony Son on their behalf after January 2003.[1]    If Defendants and their counsel are truly interested in finding out the status of the Black Rain Records contract they should subpoena Matt

---

[1] Plaintiffs have not yet received copies of the transcripts of their testimony; however, defendants have such transcripts and are acting in bad faith by submitting this opposition to this court.

Middleton, Esq., the Attorney who handled the Black Rain Records matters for Plaintiffs subsequent to January 2003.[2]

      c.    **Rosario-Davis Communications with Ebony Son Entertainment**

In September 2002, Attorney Rosario-Davis had limited communication with Jeff Dixon a principal of Ebony Sun Entertainment, manager of Defendant Bridges. Such communication involved matters that had nothing to do with the current litigation or specifically the allegations in the Complaint or Answer. The documents were copies of the Black Rain Records agreement and an unexecuted release, and have been produced by Plaintiffs and are attached to Defendants Opposition papers, i.e, Kattan Declaration as Exhibit E; however, such limited communications (i) were not made during the time period relevant or probative to the matters alleged in the Complaint or the Defendants' answers; and (ii) had nothing to do with (A) creation of the Infringed Composition, (B) access by Defendants to the Infringed Composition, nor (C) any acts of alleged infringement.   Plaintiffs have also produced an executed agreement between Plaintiffs and Ebony Son Entertainment dated July 3, 2003. This executed management agreement between Plaintiffs and Ebony Son resolves all issues regarding the co-management of Plaintiffs and Defendant Bridges. Note that Matt Middleton, Esq. negotiated  the Ebony Son Management agreement with Plaintiffs, note the address of "Untold" thereon. (See Exhibit B hereto. )

      d.    **Third Party Subpoenas – Better Information.**

Defendants have issued a third party subpoena to Black Rain Records. (See Exhibit C hereto). Again, Defendants could subpoena Matt Middleton, Esq. to obtain any relevant information regarding Black Rain Records, if they were truly interested in determining the status

---

[2] Plaintiffs both testified that Matt Middleton, Esq. was referred to them by Jeff Dixon of Ebony Son Entertainment, Inc.

of the Black Rain Records contract, and were not seeking to harass Plaintiffs' counsel in the

underlying litigation.

2. **Untold's association with other entities, who according to Plaintiffs' responses to Defendants interrogatories were involved in attempts to license and/or distribute *"What I'm Look'n 4,"* the Infringed Composition.**

Defendants have referred to Plaintiffs' responses to Defendants' discovery requests in

connection with their contention that Attorney Rosario-Davis possesses relevant discoverable

information. However, a review of Plaintiffs responses indicates that the persons identified with

knowledge of any attempts to license or otherwise exploit the Infringed Composition are Ebony

Son's principals and employees, all persons who have been deposed in the underlying action and

whom Defendants Bridges, West and EMI's counsel, Sonnenschein Nath and Rosenthal,

represented during such depositions.

3. **Plaintiffs' application to the United States Copyright Office and the accuracy of the information contained therein.**

Finally, Defendants submit that the accuracy of the information the Plaintiffs copyright

registration for the Infringed Composition needs to be tested by Attorney Rosario-Davis'

testimony.   It is common and routine for counsel to submit copyright registrations on behalf of

clients. Further, a copyright registration is necessary to file a complaint for copyright

infringement.  Both Plaintiffs Frost and Smith have testified that they are the sole authors and

owners of the copyright in the Infringed Composition, as represented on the copyright

registration. See Exhibit D. Any communications between Attorney Rosario-Davis and Plaintiffs

regarding the filing of the such copyright registration is protected attorney-client privileged

communication.

5

**B.    All Materials and Testimony Sought By The Subpoenas are Protected by Attorney-Client Privilege.**

Attorney Rosario-Davis represented the Plaintiffs in connection with unrelated entertainment related transactional matters from on or about February 2001 until on or about January 2, 2003. In January 2003, Plaintiffs and the other members of "Untold" secured new counsel, Matt Middleton, Esq. of the firm Woods & Middleton. (See Exhibit A.)

Attorney Rosario-Davis did not represent the Plaintiffs during any time period relevant to the instant litigation, i.e., during the period when they composed the Infringed Composition – *"What I'm Look'n 4"* i.e., March and April of 2003; nor (ii) during the time period that Plaintiffs alleged Defendant Christopher Bridges and Kanye West had "access" the Infringed Composition, i.e., March to October 2003.

Plaintiffs did not again retained the services of Attorney Lita Rosario-Davis in connection with this action on or about May 2005, more than a year and a half after the alleged infringement took place, to pursue this action, to seek redress for the alleged infringement.  Consequently, not only do such subpoenas seek materials irrelevant to the allegations in the Complaint, they also seek attorney-client privileged communications. Once again, there are no allegations in the Complaint or Answer that would allow Defendants to obtain any privilege attorney client-communications, nor make any such communication relevant or probative and are wholly unrelated to the underlying litigation.

**CONCLUSION**

As a result, the Motion to Quash should be granted because there is no basis for the discovery of (i)  any other matters during a time period that is not relevant to the allegations in the Complaint;  nor (ii) privileged attorney-client communications.

6

Accordingly, Plaintiffs respectfully requests that this Court enter an Order quashing the subpoenas served by Defendants on attorney Lita Rosario-Davis, and awarding costs to Plaintiffs and Attorney Rosario-Davis.

Respectfully submitted,

Lita T. Rosario, Esq. (Pro Se)
1229 15th Street, NW
Washington, DC 20005
202-628-1092

7

## CERTIFICATE OF SERVICE

I, Lita Rosario, Esq., acting pro se, hereby certify that on August 14, 2006, a true copy of the foregoing Motion to Quash was served by hand upon:

William Copley, Esq.
Sonnenschein Nath & Rosenthal LLP
1301 K Street, NW, Suite 600, East Tower
Washington, DC  20005

Lita T. Rosario, Esq.(Pro Se)
1229 15th Street, NW
Washington, DC 20005
202-628-1092

8