**EXHIBIT  A**

## WOODS & MIDDLETON, L.L.P.

ATTORNEYS AT LAW
LINCOLN BUILDING
60 EAST 42ND STREET, SUITE 1835
NEW YORK, NEW YORK 10165
TELEPHONE: (212) 573-8100
FACSIMILE: (212) 573-6113

MATTHEW J. MIDDLETON
EDWARD L. WOODS

JILL E. RAMSEY°
NICOLE S. GEORGE
°ADMITTED IN NY & NJ

January 15, 2003

**VIA CERTIFIED MAIL**
Lita Rosario, Esq.
Wyz Girl Entertainment Consulting, LLC
4717 15th Street, N.W.
Washington, D.C. 20011

         Re:    **Untold**

Dear Lita:

        Please be advised that this firm has been formally retained to represent Kelvin Price, James Sivers, Darnell Smith and Antwann Frost, collectively professionally known as "Untold", to provide legal representation with respect to their future endeavors in the entertainment industry. At our client's request, please forward a copy of all files pertaining to Untold to my attention at the address affixed above.

        If you have any questions with respect to this matter, please contact my office at (212) 573-8100. Thank you in advance for your time and cooperation.

        Best regards.

                                                        Sincerely,

                                                        Matthew J. Middleton

Confirmed & Approved By:

Kelvin Price                                            Darnell Smith

James Sivers                                            Antwann Frost

*Send 5/4?/02 12:30 pm via fax*

---

## WYZ GIRL ENTERTAINMENT CONSULTING, LLC

### 1200 G STREET, NW, SUITE 370
### WASHINGTON, D.C. 20005
### 202-628-1092
### 703-995-4345 (FAX)
info@wyzgirl.com

---

February 28, 2003

Matt Middleton, Esq.
Nicole George, Esq.
Woods & Middleton, LLP
60 East 42nd Street, Suite 1835
New York, New York 10165

RE:                UNTOLD

Dear Sir/Madam.

I am in receipt of your letter regarding your representation of Untold.  In this regard, as I have orally communicated to Nicole George, there is an unpaid balance of fees and expenses owed me by Untold.

I am preparing my bill and will forward the file as well as my bill to your offices next week. Included in my files is a Suspension Notice that I received from Black Rain Records. This notice however does not effect the ability of Untold to terminate by written notice the Black Rain Agreement in the event that Black Rain has not secured a distributor twelve (12) months after the full execution of the Black Rain Agreement (March 28). Nicole has informed me that she has a copy of the Black Rain Agreement.

If you have any additional questions prior to you receipt of the Untold file please feel free to contact me at the above number.

Sincerely,

Lita Rosario, Esq.

**EXHIBIT  B**

Ebony Son Entertainment, Inc.
1867 Adam Clayton Powell, Jr. Blvd.
Apt. 4C
New York, NY 10026

Dated as of July 1, 2003

Antwann Frost,
Kelvin Price,
James Sievers and
Darnell Smith, collectively
p/k/a "Untold"
c/o Matthew Middleton, Esq.
Woods & Middleton
60 East 42nd Street
Suite 1064
New York, NY 10165

Re:    Ebony Son Entertainment, Inc.–w- Antwann Frost,
Kelvin Price, James Sievers and Darnell Smith,
collectively p/k/a "Untold"/Management Agreement

Gentlemen:

The following when signed by you and by authorized representatives of Ebony Son Entertainment, Inc. (referred to herein as "Manager") will constitute a complete and binding agreement (the "Agreement") between you and Manager with respect to your engagement of Manager as your sole and exclusive personal manager.

Simultaneously with the execution hereof, you agree to execute the executive producer agreement annexed hereto as Exhibit "A" and forming a part hereof (the "Executive Producer Agreement"). You hereby acknowledge and agree that your execution of the Executive Producer Agreement is a material inducement for Manager entering into this agreement and that a breach by you of the Executive Producer Agreement shall also constitute a breach of this agreement.

1.    Territory:

The world (the "Territory").

2.    Scope of Manager's Activities:

(a)    During the Term (as hereinafter defined) Manager shall be your exclusive

P0 2

personal manager throughout the Territory and shall confer with, counsel, guide and advise you in all matters pertaining to your career in the entertainment and amusement industries, including, without limitation, in connection with recording and producing phonograph records, music publishing, motion pictures, legitimate theater, television, personal appearances, concerts, the use of your names, likenesses and biographical information for commercial or promotional purposes and the sale, lease or other disposition of musical, literary, dramatic or other artistic material which you may create, compose or acquire (collectively the "Entertainment Industries").

(b)     You acknowledge and agree that Manager's services hereunder shall not be exclusive to you and that nothing contained herein shall prohibit Manager from providing similar services for others or from engaging in other business activities during the Term.

(c)     Manager's services hereunder shall include, without limitation, the following:

(i)     assisting you in the selection and procurement of literary and artistic material for your exploitation as an artist;

(ii)     assisting you in the selection and engagement of producers, engineers, mixers, writers, musical directors, choreographers, vocal coaches, video directors and producers, and other creative and technical personnel;

(iii)     counseling and assisting you in the development of a professional act;

(iv)     acting as your liaison to record, publishing, film and television companies, merchandisers, booking agents and other actual and potential users of your talents and services;

(v)     assisting you in the selection of, and preliminary negotiation with, the following: theatrical, booking and similar agencies (including the solicitation of such agencies); other third parties that seek and/or procure employment and engagement for artists; and other potential users of your talents and services; and

(vi)     regularly reviewing with you all actual and potential venues and engagements of your services in the entertainment industry and all other matters relating to your professional career therein.

3.     Term:

(a)     The term of this Agreement (the "Term") shall consist of an initial period ("Initial Period") continuing until the earlier of (i) the date upon which you enter into or substantially negotiate the material provisions of a Recording Agreement (as defined herein) or (ii) eighteen (18) months from the date hereof.  In the event that you have substantially negotiated the material provisions (i.e., royalties, advances, term and product commitment) of a Recording Agreement, but have not entered into such agreement upon the date when the Initial Period would otherwise expire

PO.

(the "Expiration Date"), the Initial Period shall be extended for a period of sixty (60) days from the Expiration Date. In the event that you enter into, or substantially negotiate the material provisions of a Recording Agreement during the Initial Period, then the term of this agreement shall continue until the later of (i) nine (9) months after the initial commercial release in the United States of the first full-length, studio LP (the "First LP") recorded pursuant to the Recording Agreement or (ii) the completion of all touring and promotional activities in connection with the First LP, plus the additional contract periods, if applicable, by which the Term may be extended by Manager's exercise of the options granted to Manager in the following paragraph 3(b).

(b)    You hereby irrevocably grant to Manager the options (the "First Option" and "Second Option", respectively) to extend the Term for additional periods (the "Second Contract Period" and "Third Contract Period," respectively).

(i)    The Second Contract Period shall commence immediately upon the expiration of the First Contract Period and continue until the later of (i) nine (9) months after the initial commercial release in the United States of the second full-length, studio LP (the "Second LP") recorded pursuant to the Recording Agreement or (ii) the completion of all touring and promotional activities in connection with the Second LP. Such option shall be deemed to be exercised by Manager unless Manager shall give you written notice to the contrary at any time prior to the date that the First Contract Period would otherwise expire.

(ii)    The Third Contract Period shall commence immediately upon the expiration of the Second Contract Period and continue until the later of (i) nine (9) months after the initial commercial release in the United States of the third full-length, studio LP (the "Third LP") recorded pursuant to the Recording Agreement or (ii) the completion of all touring and promotional activities in connection with the Third LP. Such option shall be deemed to be exercised by Manager unless Manager shall give you written notice to the contrary at any time prior to the date that the Second Contract Period would otherwise expire.

(c)    If the term of any Recording Agreement expires or terminates during the Term hereof, you shall have the right to terminate the Term of this Agreement by written notice (the "Termination Notice") at any time after nine (9) months after the expiration or termination of the prior Recording Agreement if you have neither entered into nor substantially negotiated the material terms of a subsequent Recording Agreement prior to the date of the Termination Notice, provided that you cooperate with Manager, at Manager's reasonable request, in connection with activities related to securing a new Recording Agreement (including, without limitation, recording demonstration recordings and performing at showcases).

(d)    Notwithstanding anything to the contrary contained in paragraphs 3(a) and 3(b) of this Agreement,

(i)    you shall have the right to cancel the deemed automatic exercise of the First Option if, during the First Contract Period, your Gross Income (as hereinafter defined) in the aggregate is less than two hundred thousand dollars ($200,000).

(ii)    you shall have the right to cancel the deemed automatic exercise of

the Second Option if, during the Second Contract Period your Gross Income in the aggregate is less than three hundred thousand dollars ($300,000).

4.    Manager's Commission:

    (a)    In consideration for the services rendered by Manager hereunder, you shall pay a commission ("Manager's Commission") to Manager of twenty percent (20%) of your Gross Income (as hereinafter defined).

    (b)    As used in this Agreement, "Gross Income" shall mean any and all gross monies or other considerations earned, paid or payable to you or on your behalf in connection with your services and activities in the Entertainment Industries, including, without limitation, your salaries, earnings, fees, royalties, advances, gifts (given in lieu of compensation), profits, guarantees and net recoveries of claims for damages (whether by judgment, settlement or decree). Notwithstanding the foregoing sentence, Gross Income shall not include, and there shall be deducted therefrom, the following:

    (i)    all music publishing income actually retained by or payable to third parties including, without limitation, songwriter royalties payable to third party co-writers and publishing company administration fees;

    (ii)    actual recording, production and other recoupable costs of master recordings and audiovisual works other than payments retained by you (e.g., musicians fees and producers fees) as a portion of those recording costs;

    (iii)    advances and royalties paid to (A) third party record producers, mixers or engineers and (B) third party producers and directors of audio-visual works;

    (iv)    income derived from any entity in which Manager has a proprietary or income interest (but only to the extent of Manager's interest therein);

    (v)    monies reasonably paid by you to opening or other support acts and for hiring "sound and light" facilities in connection with your touring activities; provided, that you consult with Manager with respect to all matters relating to your touring activities and such related expenses;

    (vi)    any income derived by you from any non-entertainment related activities (except to the extent that you also perform entertainment services in connection therewith);

    (vii)    any monies reasonably paid by you or on your behalf to third parties in connection with independent marketing or promotion;

    (viii)    Intentionally omitted;

    (ix)    tour support payments which are actually used as deficit financing;

PO5

and

        (x)     income derived from agreements entered into after the expiration or termination of the Term. In this connection, all agreements the material terms of which are substantially negotiated and agreed upon during the Term and which are entered into within six (6) months thereafter shall be deemed entered into during the Term.

        (xi)    advances and that portion of royalties received in connection with the exploitation of master recordings for which Manager is entitled to advances and/or royalties (as applicable) pursuant to the Executive Producer Agreement.

        (c)    Notwithstanding anything contained herein, Manager's entitlement to Manager's Commission after the expiration or termination of the Term, pursuant to the terms of this Agreement, shall be reduced to the following: with respect to all other Gross Income earned by you - (1) during the first year after the Term – fifteen percent (15%), (2) during the second year after the Term – ten percent (10%), (3) during the third and fourth year after the Term – seven and one-half (7 ½%), (4) during the fifth years after the Term – five percent (5%), and (5) during the sixth year after the term and for each year thereafter - zero percent (0%).

    5.    Collection of Monies, Accountings & Audit Rights:

        (a)    At your own cost and expense, you shall retain an independent business manager ("Business Manager") to collect and receive all Gross Income; provided that (i) such Business Manager is selected by you in consultation with Manager; (ii) such Business Manager shall use reasonably acceptable methods by which to account and pay Manager's Commission and reimburse Manager's expenses; and (iii) such Business Manager is experienced in the area of music business management. Such Business Manager will pay Manager's Commission on no less than a monthly basis (but not greater than ten (10) business days following Business Manager's or Artist's receipt of the Gross Income upon which such Manager's Commission is based) and render monthly accountings Manager. Said Business Manager is hereby authorized and directed by you to pay Manager's Commission (and all reimbursable expenses and loans pursuant to paragraph 6 hereof) directly to Manager. Any and all Gross Income received directly by you or Manager shall be delivered by you or Manager, as the case may be, to Business Manager within fifteen (15) days following your or Manager's receipt thereof.

        (b)    You or Business Manager shall maintain true and correct books and records regarding your Gross Income. Manager shall have the right to reasonable inspection of your books and records which relate to the subject matter hereof in order to verify the accuracy of accountings; provided that Manager shall be deemed to have consented to all accountings rendered hereunder and said accountings shall be binding upon Manager and not subject to objection for any reason unless specific written objection, stating the basis thereof, is given to you within two (2) years after the date rendered.

    6.    Management Expenses; Loans:

        (a)    You (or Business Manager on your behalf) will reimburse Manager for any

and all out-of-pocket expenses (including, without limitation, reasonable travel expenses if you require Manager's services outside of the Los Angeles area) incurred by Manager on your behalf in connection with Manager's services performed hereunder, provided that: (i) you will not be responsible for any portion of Manager's overhead expenses; (ii) subject to paragraph 6(a)(iii) of this Agreement, if Manager incurs travel expenses (as provided herein) on behalf of both you and other of Manager's clients, you shall be responsible only for your pro rata share of such expenses; and (iii) Manager shall not incur without your prior consent (A) any single expense (other than travel expenses as requested by you) in excess of Seven Hundred Fifty Dollars ($750) or (B) aggregate monthly expenses in excess of One Thousand Five Hundred Dollars ($1,500). Manager shall not incur any travel expenses without your prior approval, not to be unreasonably withheld; provided, that your approval shall be deemed given with respect to any travel expenses incurred by Manager in connection with trips during which Manager accompanies you so long as Manager's travel arrangements are substantially similar to your own.

(b)    Manager shall furnish you (or Business Manager) with appropriate documentation of Manager's expenses and reimbursement of such expenses shall be made in connection with the monthly accountings referred to in paragraph 5(a) of this Agreement.

(c)    It is expressly understood and agreed that Manager is not required to make any loans to you or for your account. However, in the event Manager does so, all such loans shall be in writing and you shall promptly reimburse Manager the amount of any such loans from any sums received by you.

7.    Manager's Limited Power of Attorney:

During the Term, Manager is irrevocably authorized by you to act on your behalf as attorney-in-fact to do all the following: (a) approve and permit the use of your name, photograph, likeness, voice, sound effects, caricatures and literary, artistic and musical material for purposes of advertising and publicity; (b) execute for you in your name and/or on your behalf when you are not immediately available any and all agreements, documents and contracts for pre-approved live appearance "one-nighters" or a series of live appearance "one-nighters", and exercise, on your behalf, any rights to examine and/or audit books and records in connection therewith; and (c) after consultation and approval by you, engage as well as discharge and/or direct for you, and in your name, agents, public relations firms as well as other persons, firms and corporations who may be retained in connection with your affairs in the entertainment industry.

8.    Warranties and Representations:

(a)    You warrant, represent and agree that you are not under any disability, restriction or prohibition, either contractual, by force of any applicable law or otherwise, with respect to your right to execute this Agreement or to perform fully all of its terms and conditions.

(b)    Manager warrants, represents and agrees that Manager is not under any disability, restriction or prohibition, either contractual, by force of any applicable law or otherwise, with respect to Manager's right to execute this Agreement or to perform fully its terms and conditions.

(c)    You hereby acknowledge that Manager is not an employment agent, theatrical agent, or licensed artists' manager, and that Manager has not promised to procure employment or engagements for you, and that Manager shall not be obligated to procure or to attempt to procure any employment or engagements for you hereunder. You shall be solely responsible for payment of all necessary commissions to booking or similar agencies. You shall at all times engage reputable and competent licensed booking and theatrical agents or other employment agencies, which are acceptable to Manager, to obtain engagements and employment for you. Any compensation which you may be required to pay to such agents or agencies shall be at your sole cost and expense.

(d)    You and Manager each warrant and represent that in executing this Agreement, each of you (i) have relied solely upon your own judgment, belief and knowledge and the advice and recommendations of your own independently selected and retained counsel concerning the nature, extent and duration of your respective rights and obligations hereunder, and (ii) have not been influenced to any extent whatsoever in executing this Agreement by any representations or statements made with respect to any matters (other than as specifically set forth herein) by the other party or representatives of such party.

9.    Indemnification:

You and Manager agree to indemnify, and hereby do indemnify, save and hold the other harmless from all loss, damage and expenses (including actual legal costs and reasonable attorney's fees) arising out of or connected with any claim by any third party which shall be inconsistent with any agreement, warranty or representation made by you or Manager in this Agreement or resulting from the use in any manner of the NIL Materials (as defined below), provided such claim is reduced to a final adverse judgment or settled with the prior written consent of the indemnifying party. You and Manager each agree to reimburse the other, on demand, for any payment made at any time after the date hereof with respect to any liability to which the foregoing indemnity applies.

10.    Cure:

In order to make specific and definite, and/or to eliminate, if possible, any controversy which may arise between the parties hereunder, you and Manager agree that if at any time you or Manager, as applicable, believe that the terms of this Agreement are not being fully and faithfully performed hereunder, you or Manager, as applicable, will so advise the other in writing by registered or certified mail, return receipt requested, of the specific nature of any such claim, non-performance or misfeasance, and the party receiving such notice (the "Curing Party") shall have a period of thirty (30) days after receipt thereof within which to cure such claimed breach, or, if such breach is not reasonably capable of being cured within such thirty (30) day period, the Curing Party does not commence to cure such breach within such thirty (30) day period and proceed with reasonable diligence to complete the curing of such breach thereafter. Each party hereto agrees that no breach, non-performance or misfeasance by either party hereto, unless intentionally dishonest, will be construed as incurable.

11.    Independent Counsel:

You specifically acknowledge that (i) you have been advised to seek your own independent counsel concerning the interpretation and legal effect of this Agreement and (ii) you have either obtained such counsel or have intentionally refrained from doing so and have knowingly and voluntarily waived such right.

12.    Notices:

All notices pursuant to this Agreement shall be in writing and shall be given by registered or certified mail, return receipt requested or telegraph (prepaid) at the respective addresses hereinabove set forth or such other address(es) as may designated by either party. Such notices shall be deemed given when mailed or delivered to a telegraph office, except that a notice of change of address shall be effective only from the date of its receipt. A copy of all notices sent to Manager shall be sent concurrently to Selverne, Mandelbaum & Mintz, LLP, 1775 Broadway, Suite 2300, New York, NY 10019; Attention: Thomas I. Mandelbaum, Esq.

13.    Assignment:

Subject to paragraph 14 below, Manager may assign this Agreement to any of Manager's affiliates or to any person or entity owning or acquiring a substantial portion of the stock or assets of Manager or to any person or entity owning or acquiring a substantial portion of the stock or assets of Manager (or to any third party with your written approval, not to be unreasonably withheld). You may not assign this Agreement or any of your rights hereunder without Manager's prior written consent. Any attempted assignment by you or Manager in contravention of this paragraph 13 shall be void. This Agreement shall be binding upon you and Manager and shall inure to the benefit of your and Manager's respective successors and assigns. This Agreement shall also be binding upon any entity which, directly or indirectly, in whole or part, through one or more intermediaries, owned or controls, is owned or controlled by, or is under common ownership or control with, you (a "Controlled Entity"). Accordingly, this Agreement is hereby accepted by you on your behalf and on behalf of each Controlled Entity.

14.    Key Man

During the Term, Jeff Dixon or Chaka Zulu ("Keyman") shall personally supervise and oversee the activities and services to be provided by Manager hereunder. In the event that Keyman ceases to supervise and oversee the activities and services to be provided by Manager, your remedy shall be to terminate the Term by written notice to Manager, subject to the provisions of paragraph 10 hereinabove, effective upon the date of Manager's receipt of such notice.

15.    Miscellaneous:

(a)    This Agreement contains the entire understanding of the parties hereto relating to the subject matter hereof and cannot be changed or terminated, except by an instrument signed by the parties hereto. A waiver by either party of any term or condition of this

agreement in any instance shall not be deemed or construed as a waiver of such term or condition for the future, or of any subsequent breach thereof. All remedies, rights, undertakings, obligations, and agreements contained in this agreement shall be cumulative and none of them shall be in limitation of any other remedy, right, undertaking, obligation or agreement of either party. This Agreement shall not be construed to create a partnership or joint venture between you and Manager. The headings in this Agreement are provided for convenience only and are not to be used in construing this Agreement.

(b)    This Agreement has been entered into in the State of New York, and the validity, interpretation and legal affect of this Agreement shall be governed by the laws of the State of New York, applicable to contracts entered into and performed entirely within that state. All claims, disputes or disagreements which may arise out of the interpretation, performance or breach of this Agreement shall be submitted exclusively to the jurisdiction of the state courts of the State of New York, or the Federal District courts, located in New York County.

(c)    If you form a corporation during the Term for the purposes of furnishing and exploiting your artistic talents, you agree that such corporation is hereby deemed to have entered into a management agreement with Manager from the inception of the corporation identical in all respects to this Agreement (except as to the parties hereto). In such event the gross earnings of such corporation shall be included as part of the Gross Income, and any salary or other compensation paid to you by such corporation shall be excluded from your Gross Income for purposes of calculating Manager's Commission.

16.    Group Provisions:

(a)    The term "you" shall be deemed to refer collectively to the musical group (the "Group") professionally known as "Untold" (the "Name") as well as to each individual member of the Group, and this Agreement shall be binding jointly and severally upon said persons and the Group. The Group shall not perform under any name other than the Name without consulting with Manager. If any of you engage in any services or activities in the Entertainment Industries separate and apart from the Group, this Agreement shall nonetheless apply and all of the terms and conditions of this Agreement shall be applicable to such services and activities. Each and all of the representations, warranties, agreements and obligations herein contained shall be and are deemed to be the joint and several representations, warranties, agreements and obligations of said persons, the Group, and each of them. Any breach of this Agreement by any one or more of the members of the Group shall be deemed a breach by all members of the Group.

(b)    (i)    You shall notify Manager promptly if one or more of the individual members of the Group leaves the Group (or if the Group disbands) for any reason whatsoever (collectively the "leaving member"). Following the date hereof, no individual shall become a member of the Group, either in replacement of any individual currently a member of the Group or otherwise (a "New Member") without consulting with Manager. Any approved New Member shall be automatically bound by the terms and conditions of this Agreement as if such New Member had executed the Agreement on the date hereof. You shall cause each such approved New Member to execute and deliver to Manager any and all documents which Manager may

reasonably deem necessary to evidence the foregoing including, without limitation, an agreement with Manager containing the same terms and conditions set forth herein, but Manager's rights hereunder shall not be diminished by any such approved New Member's failure or refusal to execute such agreement. No leaving member shall make any further use of the Name whatsoever.

(ii)    Manager shall continue to represent the Group (if the Group has not disbanded) and the leaving member (or each individual Group member if the Group disbands) as separate entities under the terms of this Agreement unless Manager shall give the remaining Group members and/or the leaving member notice within forty five (45) days after Manager receives notice of a leaving member, that Manager elects to treat this Agreement as terminated by the Group and/or leaving member, in which event the term of this Agreement shall be deemed terminated as to the party or parties to whom such notice is given. The parties to whom such notice is given shall remain obligated to pay Manager's Commission or other sums owed or accrued to Manager's account prior to such termination and thereafter as provided herein.

17.    Intentionally omitted

18.    Name and Likeness:

(a)    You hereby give and grant to Manager and its affiliates, and their successors and assigns, during the Term, the right to use, throughout the universe, the legal and professional name(s) of you, and approved photographs, likenesses, other identifications, and biographical material concerning you (collectively the "NIL Materials"), solely in connection with the promotion and exploitation of Manager's business, including, but not limited to, use of NIL Materials in so-called "institutional advertising" or in any so-called "website" that Manager may have, without restriction ("Manager's Website").

(b)    You shall have the right to approve any photographs, likenesses and biographical materials selected or commissioned by Manager; provided that your consent to the NIL Materials shall not be unreasonably withheld or delayed and shall be deemed given within ten (10) business days after the date such materials are made available to you. Any NIL Materials that is furnished by a third party (i.e., album artwork) and has previously been approved by you shall be deemed approved hereunder.

(c)    During the Term of this Agreement, Manager will maintain a hypertext link to your official website; provided that Manager's inadvertent failure to maintain such hypertext link shall not be deemed a breach hereof.

(d)    You acknowledge that Manager shall not be required to make any payments of any nature for or in connection with the acquisition, exercise or exploitation of any rights granted to Manager hereunder.

(e)    Manager acknowledges and agrees that: (i) as between you and Manager, you own all right, title and interest in the NIL Materials; and (ii) nothing in this Agreement shall

confer in Manager any right of ownership in the NIL Materials. You acknowledge and agree that: (i) as between you and Manager, Manager owns all right, title and interest in Manager's Website; and (ii) nothing in this Agreement shall confer in you any license or right of ownership in the Website. Manager shall own all derivative works created by Manager from the NIL Materials pursuant to this Agreement. No licenses are granted by either party except for those expressly set forth in this Agreement.

Very truly yours,

Ebony Son Entertainment, Inc.

By: _____
An authorized signatory

CONSENTED AND AGREED TO:

_____
Antwann Frost
Date of Birth 4-2-78

_____
Kelvin Price
Date of Birth 4-6-78

_____
James Sievers
Date of Birth 8-32-80

_____
Darnell Smith
Date of Birth 05-06-79

EXHIBIT  C

AO 88 (Rev. 1/94) Subpoena in a Civil Case - SDNY WEB 4/99

## Issued by the
# UNITED STATES DISTRICT COURT

_____ Southern _____ DISTRICT OF _____ New Y

Antwann Frost, et al.,
Plaintiffs

**V.**

Christopher Bridges, et al.,
Defendants

**SUBPOENA IN A (SE**

CASE NUMBER:  ¹   06 Civ. (

TO:   Black Rain Records, Inc.
1976 Flatbush Avenue
Brooklyn, NY 11234

☐ YOU ARE COMMANDED to appear in the United States District Court at the place, date, and time w to testify in the above case.

| PLACE OF TESTIMONY | COU |
|---|---|
| | DAT |

☐ YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at th deposition in the above case.

| PLACE OF DEPOSITION | DA |
|---|---|

☑ YOU ARE COMMANDED to produce and permit inspection and copying of the following documen at the place, date, and time specified below (list documents or objects):

See Attachment A

| PLACE | D |
|---|---|
| Sonnenschein Nath & Rosenthal LLP, 1221 Avenue of the Americas, New York, NY 10020 | 06 |

☐ YOU ARE COMMANDED to permit inspection of the following premises at the date and time w.

| PREMISES | D |
|---|---|

Any organization not a party to this suit that is subpoenaed for the taking of a deposition s one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and m each person designated, the matters on which the person will testify,  Federal Rules of Civil Procedure, 30(b)

| ISSUING OFFICER SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | | |
|---|---|---|
| [signature]   Attorneys for Defendants | C |

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER
Justin Kattan (JK-9724), Sonnenschein Nath & Rosenthal LLP, 1221 Ave. of the Americas, New York, NY 10020, 212-7

(See Rule 45, Federal Rules of Civil Procedure, Parts C & D on Reverse)

¹ If action is pending in district other than district of issuance, state district under case number.

## ATTACHMENT A

**REQUEST NO. 1**:

All documents concerning the performing/recording artists Untold.

**REQUEST NO. 2**:

All documents concerning the musical career of Untold, Antwann Frost and Darnell Smith, including but not limited to any and all recordings created or compositions authored by Untold, Frost or Smith.

**REQUEST NO. 3**:

All documents concerning the composition and/or recording "What I'm Look-N-4", including but not limited to all recordings created at any time of the musical composition "What I'm Look-N-4".

**REQUEST NO. 4**:

All documents concerning the authors of "What I'm Look-N-4", including but not limited to all documents concerning the songwriting career of any author of "What I'm Look-N-4".

**REQUEST NO. 5**:

All documents concerning the recording or production of the composition "What I'm Look-N-4" at any recording studio, including but not limited to studio logs, notes of recording sessions, invoices, bills, receipts, cancelled checks, and documents referring to the dates on which "What I'm Look-N-4" was recorded.

**REQUEST NO. 6:**

All documents concerning any rights or interests of Antwann Frost, Darnell Smith and/or any other party in and to the composition "What I'm Look-N-4."

**REQUEST NO. 7:**

All documents concerning any license or permission, whether formal or informal, requested or granted to any person, entity or group to undertake a public performance of the composition "What I'm Look-N-4."

**REQUEST NO. 8:**

All documents reflecting communications between Black Rain Records, Inc. (or any representative thereof) on the one hand, and Lita Rosario Davis, Esq. on the other hand concerning the group Untold.

**REQUEST NO. 9:**

All documents concerning the March 28, 2002 recording agreement by and between Black Rain Records, Inc. and the group collectively known as "Untold," including documents concerning the modification and or termination of that agreement.

17521673\V-1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X

ANTWANN FROST, DARNELL SMITH          :

    Plaintiffs,          :

                     :          CASE NO. 06 Civ. 0874 (JSR)

             v.          :

CHRISTOPHER BRIDGES, KANYE WEST,          :
EMI APRIL MUSIC, INC., a Connecticut          :
Corporation, LUDACRIS MUSIC PUBLISHING,          :
INC., YE WORLD MUSIC, UMG          :
RECORDINGS, INC, and JOHN DOE          :
DEFENDANTS 1-100          :
                     :

    Defendants.          :
------------------------------------------------------------X

## NOTICE OF SUBPOENA

PLEASE TAKE NOTICE that, pursuant to Rule 45 of the Federal Rules of Civil

Procedure, Defendants have issued copies of the attached subpoena.

Dated: New York, New York
      August 1, 2006          SONNENSCHEIN NATH & ROSENTHAL LLP

                                By: _____
                                  Christine Lepera (CL 9311)
                                  Justin N. Kattan (JK 9724)
                                  1221 Avenue of the Americas
                                  New York, New York 10020
                                  Telephone: 212-768-6700

*Attorneys for Defendants Christopher Bridges, Kanye West, Ludacris Music Publishing, Inc., Ye World Publishing, Inc. (incorrectly sued as "Ye World Music") and EMI April Music Inc.*

TO:    Robert A. Walters, Esq.
       Simms & Walters, PC
       636 Broadway, Suite 500
       New York, New York  10012
       Attorneys for Plaintiffs

       Andrew Bart, Esq.
       Jenner & Block
       919 Third Avenue
       New York, New York 10022
       Attorneys for UMG Recordings, Inc.

## CERTIFICATE OF SERVICE

I, Justin Kattan, hereby certify that on August 1, 2006, I caused a true copy of the

foregoing Notice of Subpoena to be served by fax and U.S. Mail upon:

Robert A. Walters, Esq.
Simms & Walters PC
636 Broadway, Suite 500
New York, New York 10012

Andrew Bart, Esq.
Jenner & Block
919 Third Avenue
New York, New York  10021

Dated: New York, New York
August 1, 2006

_____
Justin Kattan

**EXHIBIT  D**

Copyright Office fees are subject to change.
For current fees, check the Copyright Office
website at www.copyright.gov, write the Copy-
right Office, or call (202) 707-3000

**Form PA**
For a Work of Performing Arts
UNITED STATES COPYRIGHT OFFICE

REGISTRATION NUMBER

_____

| PA | PAU |
|---|---|

EFFECTIVE DATE OF REGISTRATION

| Month | Day | Year |
|---|---|---|

**DO NOT WRITE ABOVE THIS LINE. IF YOU NEED MORE SPACE, USE A SEPARATE CONTINUATION SHEET.**

**1**

TITLE OF THIS WORK ▼

"What I'm Look-N 4"

PREVIOUS OR ALTERNATIVE TITLES ▼

"Untitled"

NATURE OF THIS WORK ▼ See Instructions

Musical Composition

**2**

**a** NAME OF AUTHOR ▼

Antwann Frost

DATES OF BIRTH AND DEATH
Year Born ▼ 1978   Year Died ▼

Was this contribution to the work a "work made for hire"?
☐ Yes
☑ No

AUTHOR'S NATIONALITY OR DOMICILE
Name of Country
OR { Citizen of ___ USA
      Domiciled in ___

WAS THIS AUTHOR'S CONTRIBUTION TO THE WORK
Anonymous? ☐ Yes ☑ No
Pseudonymous? ☐ Yes ☑ No
If the answer to either of these questions is "Yes," see detailed instructions.

**NOTE**

Under the law, the "author" of a "work made for hire" is generally the employer, not the employee (see instructions). For any part of this work that was "made for hire" check "Yes" in the space provided, give the employer (or other person for whom the work was prepared) as "Author" of that part, and leave the space for dates of birth and death blank.

NATURE OF AUTHORSHIP Briefly describe nature of material created by this author in which copyright is claimed. ▼

music

**b** NAME OF AUTHOR ▼

Darnell Smith

DATES OF BIRTH AND DEATH
Year Born ▼ 1979   Year Died ▼

Was this contribution to the work a "work made for hire"?
☐ Yes
☐ No

AUTHOR'S NATIONALITY OR DOMICILE
Name of Country
OR { Citizen of ___ USA
      Domiciled in ___

WAS THIS AUTHOR'S CONTRIBUTION TO THE WORK
Anonymous? ☐ Yes ☑ No
Pseudonymous? ☐ Yes ☑ No
If the answer to either of these questions is "Yes," see detailed instructions.

NATURE OF AUTHORSHIP Briefly describe nature of material created by this author in which copyright is claimed. ▼

lyrics

**c** NAME OF AUTHOR ▼

DATES OF BIRTH AND DEATH
Year Born ▼   Year Died ▼

Was this contribution to the work a "work made for hire"?
☐ Yes
☐ No

AUTHOR'S NATIONALITY OR DOMICILE
Name of Country
OR { Citizen of ___
      Domiciled in ___

WAS THIS AUTHOR'S CONTRIBUTION TO THE WORK
Anonymous? ☐ Yes ☐ No
Pseudonymous? ☐ Yes ☐ No
If the answer to either of these questions is "Yes," see detailed instructions.

NATURE OF AUTHORSHIP Briefly describe nature of material created by this author in which copyright is claimed. ▼

**3**

**a** YEAR IN WHICH CREATION OF THIS WORK WAS COMPLETED This information must be given   Year in all cases.

2003

**b** DATE AND NATION OF FIRST PUBLICATION OF THIS PARTICULAR WORK
Complete this information Month ___ Day ___ Year ___
ONLY if this work has been published.
Nation

**4**

COPYRIGHT CLAIMANT(S) Name and address must be given even if the claimant is the same as the author given in space 2. ▼

Antwann Frost
c/o WYZ Girl Ent., 1229 15th St, NW, WDC 200

See instructions before completing this space.

TRANSFER If the claimant(s) named here in space 4 is (are) different from the author(s) named in space 2, give a brief statement of how the claimant(s) obtained ownership of the copyright. ▼

APPLICATION RECEIVED

ONE DEPOSIT RECEIVED

TWO DEPOSITS RECEIVED

FUNDS RECEIVED

DO NOT WRITE HERE OFFICE USE ONLY

**MORE ON BACK ▶**
• Complete all applicable spaces (numbers 5-9) on the reverse side of this page.
• See detailed instructions.
• Sign the form at line 8.

DO NOT WRITE HERE
Page 1 of ___ pages

P0226

EXAMINED BY

CHECKED BY

FORM PA

☐ CORRESPONDENCE
☐ Yes

FOR
COPYRIGHT
OFFICE
USE
ONLY

DO NOT WRITE ABOVE THIS LINE. IF YOU NEED MORE SPACE, USE A SEPARATE CONTINUATION SHEET.

**PREVIOUS REGISTRATION** Has registration for this work, or for an earlier version of this work, already been made in the Copyright Office?
☐ Yes ☐ No  If your answer is "Yes," why is another registration being sought? (Check appropriate box.) ▼ If your answer is No, do not check box A, B, or C.
a. ☐ This is the first published edition of a work previously registered in unpublished form.
b. ☐ This is the first application submitted by this author as copyright claimant.
c. ☐ This is a changed version of the work, as shown by space 6 on this application.
If your answer is "Yes," give: Previous Registration Number ▼                   Year of Registration ▼

**5**

**DERIVATIVE WORK OR COMPILATION** Complete both space 6a and 6b for a derivative work; complete only 6b for a compilation.
Preexisting Material Identify any preexisting work or works that this work is based on or incorporates. ▼

**a**

Material Added to This Work Give a brief, general statement of the material that has been added to this work and in which copyright is claimed. ▼

**b**

See instructions
before completing
this space.

**6**

**DEPOSIT ACCOUNT** If the registration fee is to be charged to a Deposit Account established in the Copyright Office, give name and number of Account.
Name ▼                                                           Account Number ▼

**a**

**7**

**CORRESPONDENCE** Give name and address to which correspondence about this application should be sent. Name/Address/Apt/City/State/ZIP ▼

Lita Rosario-Davis, Esq.  WYZ Girl Entertainment, 1229 15th St,
NW, Washington, DC 20005    202-628-1092

**b**

Area code and daytime telephone number    202 628-1092              Fax number  703 995-4345
Email  lita.rosario@wyzgirl.com

**8**

**CERTIFICATION*** I, the undersigned, hereby certify that I am the
                                        ☐ author
Check only one ▶                        ☐ other copyright claimant
                                        ☐ owner of exclusive right(s)
                                        ☑ authorized agent of ___Antwann Frost___
                                                              Name of author or other copyright claimant, or owner of exclusive right(s) ▲
of the work identified in this application and that the statements made by me in this application are correct to the best of my knowledge.

Typed or printed name and date ▼ If this application gives a date of publication in space 3, do not sign and submit it before that date.

Lita Rosario-Davis, Esq.                              Date  12/29/05

Handwritten signature (X) ▼

x _Lita Rosario-Davis, Esq_

**9**

Certificate
will be
mailed in
window
envelope
to this
address:

Name ▼
Lita Rosario-Davis, Esq/WYZ Girl Entertainme
Number/Street/Apt ▼
1229 15th Street, NW
City/State/ZIP ▼
Washington, DC 20005

YOU MUST
• Complete all necessary spaces
• Sign your application in space 8
SEND ALL 3 ELEMENTS
IN THE SAME PACKAGE:
1. Application form
2. Nonrefundable filing fee in check or money
   order payable to Register of Copyrights
3. Deposit material
MAIL TO:
Library of Congress
Copyright Office
101 Independence Avenue, S.E.
Washington, D.C. 20559-6000

*17 U.S.C. § 506(e): Any person who knowingly makes a false representation of a material fact in the application for copyright registration provided for by section 409, or in any written statement filed in connection with the application, shall be fined not more than $2,500.

June 2002—20,000    Web Rev: June 2002    ⊕ Printed on recycled paper                    U.S. Government Printing Office: 2000-461-113/20,021



P0228